

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

*Federal Center*                    *716/843-5700*
*138 Delaware Avenue*              *fax 716/551-3052*
*Buffalo, New York 14202*

February 26, 2021

*BY ELECTRONIC FILING*

Hon. Elizabeth A. Wolford
United States District Judge
Western District of New York
Kenneth B. Keating Building
100 State Street
Rochester, New York 14614

Re: <u>United States v. Any and All Joint Venture Units, et al.</u>, 20-CV-334
    <u>United States v. Robert Morgan, et al.</u>, 18-CR-108

Dear Judge Wolford:

In response to a question regarding *in rem* jurisdiction posed by Your Honor during the status conference on January 6, 2021, Mr. Mark S. Cohen, Esq., counsel for Robert Morgan and Todd Morgan in 20-CV-334 contends that the Court does not have *in rem* jurisdiction over the distributions owed to the JV Units and that government is required to establish *in rem* jurisdiction over "other property" i.e., here, the JV Units. *See* 20-CV-334, *Dkt.* 162 at p. 8. As the Court is aware, the government has advised the escrow agent that it has no objection to the release of cash distributions to the movants in 20-CV-334 and, as such, the motions for release of property should be denied as moot, and the question with regard to *in rem* jurisdiction over the distributions need not be reached.

At the January 6, 2021, status conference, the Court posed the following question:

**If the Court concludes that the October 2019 stipulation(s) do not constitute restraining orders, then what is the impact? Does the Court have in rem jurisdiction? Is there any argument that the issue has been waived?**

First and foremost, to date, no party has challenged or questioned the Court's *in rem* jurisdiction over the JV Units in 20-CV-334. This is not surprising, because to do so would be

to contravene the stipulation into which the parties entered in October 2019. (*Dkt.* 26, 19-CV-1157). In Paragraph 45 of that Stipulation, the parties agreed:

> Upon the Closing, the United States of America confirms and agrees that it will not seek civil forfeiture of any of the eighty-eight real properties… and that it will instead bring any future civil forfeiture action against JV Units…Whereas the Parties agree that, after filing a civil forfeiture action against JV Units equal to the agreed-upon equity value of the entity which operated and owned the Joint Venture Property, the United States of America shall provide the Joint Venture, all Parties, and any member holding JV Units from the Joint Venture Property with a copy of the civil forfeiture complaint [].   Upon receipt of the civil forfeiture complaint …the Joint Venture shall prohibit the transfer of any such identified JV Units during the pendency of the related civil forfeiture action [.]

Having agreed that the United States could proceed against the JV Units rather than the real properties from which they were derived, and further agreeing that such JV Units would be restrained upon the filing of a civil forfeiture complaint, it is inconceivable that any party could, consistent with the stipulation, contend in a subsequent forfeiture action that the Court lacked *in rem* jurisdiction over the very *res* which all agreed was fair game.

By agreeing to the future action would be against JV Units underlined instead of the real properties as well as to the present and restraint of the JV Unit *during the pendency of the related forfeiture action* (19-CV-1157 and 20-CV-334), [*Dkt.* 26 at ¶45], the parties agreed that the Court could exercise *in rem* jurisdiction over the *res* (here, the JV Units).

The pending motions make it clear the movants understood the agreement to file against and restrain the JV Units in lieu upon of the real property constituted an agreement that conferred *in rem* jurisdiction over the JV Units in any future civil forfeiture action, here, 20-CV-334. *See* 19-CV-1157 at *Dkt.* 26.     The parties' intentions about how the properties would be treated going forward in the litigation is set forth in those binding agreements. Those documents must be reviewed as a whole and with an understanding of what the parties intended at the time the agreements were negotiated.

Further, even if the Stipulation itself does not constitute a waiver of an *in rem* jurisdiction defense, Claimants waived any challenge to *in rem* jurisdiction by not moving for dismissal for lack of *in rem* jurisdiction or by challenging *in rem* jurisdiction in their motions and by their litigation conduct. "Jurisdiction, it has been observed, is a word of many, too many, meanings[.]" *Steel Co. v. Citizens for a Better Env't*, 118 S. Ct. 1003, 1010 (1998) (quotation marks omitted). Though Claimants repeatedly emphasize that the *in rem* question is "jurisdictional[,]" it is not, like subject matter jurisdiction, a non-waivable defense.   *See, e.g.*, Rule G(5)(b) ("A claimant waives an objection to *in rem* jurisdiction or to venue if the objection is not made by motion or stated in the answer.")

The Rules governing *in rem* jurisdiction in forfeiture actions expressly acknowledge that a party can waive *in rem* jurisdiction.

Rule G(5)(b) of the Supplemental Rules states that "[a] claimant waives an objection to *in rem* jurisdiction or to venue if the objection is not made by motion or stated in the answer." Rule G(5)(b); *see also* 2006 Advisory Committee Notes to Fed. R. Civ. P. Supp. R. for Admiralty or Maritime and Asset Forfeiture Action G.

Even before the 2006 amendments to the Federal Rules clarified the waivability of *in rem* jurisdiction in forfeiture actions, courts regularly held that an objection to *in rem* jurisdiction, including an objection to the manner of obtaining jurisdiction, is waived if the objection is not raised in a pre-answer motion or in the answer itself. *See, e.g., Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 256 (4th Cir. 2002) ("in admiralty and civil forfeiture cases, for years courts have held that objections to *in rem* jurisdiction may be waived." (citing cases)). This is because *in rem* jurisdiction is an alternative to *in personam* jurisdiction where the court seeks to exert its power over a person's interest in a thing. *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977); *see also Porsche Cars N. Am., Inc.*, 302 F.3d at 256. And just as a party can waive *in personam* jurisdiction, so too can a party waive *in rem* jurisdiction. *See United States v. Republic Marine, Inc.*, 829 F.2d 1399, 1402 (7th Cir. 1987) ("a vessel may waive jurisdiction in rem by appearing in the action and failing to raise the defense of lack of jurisdiction over the party in a timely fashion."); *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 185–87 (2d Cir. 2018) (citing "significant authority" for the rule that defects to in rem jurisdiction can be waived); *c.f. Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (finding that a party properly objected to in rem jurisdiction by "explicitly and vigorously" raising the objection before filing an answer).

Thus, by agreeing that the JV Units would be the appropriate *res* in any future forfeiture action, and by agreeing that such JV Units would be restrained during such action, the parties have waived any objection to *in rem* jurisdiction.

In any event, to the extent that the Court believes that questions remain regarding *in rem* jurisdiction, the government has moved for a restraining order (*Dkt.* 161, 20-CV-334) over the JV Units which does no more than maintain the restraints that the parties agreed to in the October 2019 Civil Stipulation. *Dkt.* 26, 19-CV-1157 at ¶45. If granted, this restraining order unequivocally provides a basis for the Court to exercise *in rem* jurisdiction.

At the January 6, 2021, status conference, the Court also posed the following question:

**Were the warrants In Rem issued improperly, and if so, what is the impact of that?**

In the letter submission dated February 12, 2021 (18-CR-108, *Dkt.* 492), Robert Morgan makes additional arguments in support of his motion for contempt in 08-CR-108. These additional arguments are primarily related to the issuance of the Arrest Warrant In Rem by the Clerk of the Court on October 14, 2020. In its submission filed on February 12, 2021, the government set forth the circumstances under which it submitted the arrest warrants to the Clerk of the Court in 20-CV-1484 and 20-CV-334. That submission refutes Morgan's

latest attempt to paint the government's actions as an audacious and deliberate attempt to contravene this Court's authority.

Morgan also seems to characterize the government's *ex parte* motion for a restraining order as part and parcel of its contemptuous plan, complaining that he had no opportunity to contest the proposed restraint. However, 18 U.S.C. § 983(j)(1)(A) authorizes the Court to issue such an order "upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture," with no mention of notice or an opportunity to be heard. *Compare* 18 U.S.C. § 983(j)(1)(B) (requiring notice and an opportunity to be heard if the restraint is sought prior to the filing of a complaint). Thus, that the government properly proceeded *ex parte* lends no support to Morgan's claim that the government should be held in contempt.[1]

Moreover, although Morgan makes these additional arguments, he has not expanded his request for relief beyond that which he made in the contempt motion filed on October 29, 2020, that is, "an order requiring the United States to cure its contempt by withdrawing the complaint filed in [20-CV-1484]."   As the government has withdrawn the complaint, and the Court has issued an Order dismissing it, Morgan has received all the relief which he has requested, and his motion should be denied as moot.

Very truly yours,

JAMES P. KENNEDY, JR.
United States Attorney


BY:   *S/Joseph J. Karaszewski*
JOSEPH J. KARASZEWSKI
Assistant U.S. Attorney

*S/Mary Clare Kane*
S/MARY CLARE KANE
Assistant United States Attorney


cc: All Counsel of Record by ECF

---

[1]Morgan asks at footnote 3 of his February 12, 2021 letter "why the government believed it needed to move for a restraining order, if it believed the Arrest Warrant was effective." The government's February 12, 2021 submission answers this question. That is, the government sought the arrest warrant *in rem* as a matter of rote and in error, not because it "believed [it] was effective," and has taken measures to ensure that, when in the future it institutes a proceeding against an asset which is not actually in the government's possession, custody or control, the error will not happen again.

5