IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

      v.                                                                                                                      18-CR-108-EAW

ROBERT C. MORGAN, et al.,

                Defendants.

───────────────────────────────────────────────

### RESPONSE TO COURT'S QUESTIONS REGARDING DISCOVERY

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Assistant United States Attorneys Douglas A.C. Penrose and Evan K. Glaberson, of counsel, hereby files this response to questions raised by the Court during oral argument on December 13, 2021.

### INTRODUCTION

During oral argument on defendants' motions to reconsider, which took place on December 13, 2021, the Court raised several questions about aspects of the government's provision of discovery in the above-captioned case. The Court specifically asked the government to provide affidavits from individuals with personal knowledge of the answers to the following questions:

    (1) Who decided what to search in the Dell PowerVault server ("the PowerVault server"), and when were those decisions made? Why was it decided to only search a portion of the PowerVault server (*i.e.*, only the Microsoft Exchange server ("the Exchange server"))? Was the decision made by agents alone, or were there prosecutors involved, and if so which ones?

    (2) Who made the decision to extract only the .pst files for seven named individuals from the Barracuda Message Archiver ("the Barracuda Archiver") without

    extracting any other data? When was this decision made? Why was this decision made?

(3) Who determined that the information that the government identified on the "Besant Phone" did not fall within the government's Rule 16 discovery obligations? When was this decision made? Why was it made? Was this decision revisited in connection with the May 2019 Superseding Indictment? Why not?

(4) When were the Kevin Morgan December 2018 T-12s received? Who determined they would not be produced? When and why was this decision made?

The Court requested the government provide affidavits in response to the questions detailed above from any individual with personal knowledge. Attached hereto are sworn statements[1] from Assistant United States Attorney ("AUSA") Douglas Penrose (**Exhibit A**), AUSA John Fabian (**Exhibit B**), Federal Housing Finance Agency Office of the Inspector General ("FHFA-OIG") Special Agent ("SA") Erik Lars Hansen (**Exhibit C**), and Federal Deposit Insurance Corporation Office of the Inspector General ("FDIC OIG") (former FHFA Forensic) Special Agent Umesh Patel (**Exhibit D**). In addition, the government is providing the Court a single narrative document, a roadmap, pulling together the factual recitations from each of the attached statements in order to provide more clarity and assist the Court in reviewing the attached statements.

### I.    THE POWERVAULT SERVER

No single decision resulted in only the Exchange server being searched on the PowerVault server. Rather, a series of decisions during the investigation of this matter set a priority on searching email evidence as the most likely source of relevant information. As set forth in more detail below, this determination was initially made during conversations among

---

[1] With the exception of Special Agent Umesh Patel, each of the sworn statements is in affidavit form. Special Agent Patel is currently on temporary duty travel and unable to have his statement notarized. His sworn statement is submitted pursuant to Title 28, United States Code, Section 1746.

2

AUSA Fabian, SA Hansen, Federal Bureau of Investigation ("FBI") SA Luke Humphrey, and possibly others.

After seizing the PowerVault server from the Frontier CyberCenter ("Frontier"), FHFA OIG computer forensic agent Umesh Patel ("SA Patel"), segregated the data from the Exchange server and data from the Barracuda Archiver, as set forth below, which was then provided to the U.S. Attorney's Office in Buffalo ("USAO"), where that data was processed, and search terms were applied to that data. The only material copied off the PowerVault server was the data from the Exchange server and backup files. The backup files from the PowerVault server were never searched.

Ultimately, with respect to the PowerVault server, because of the immense amount of data copied as a result of the Morgan Management and Frontier search warrants, and the press for time to meet discovery deadlines, AUSAs Fabian and Penrose decided in approximately October 2018 only to search the data from the Exchange server at that time.

A. **Execution of the Search Warrants at Morgan Management and Frontier CyberCenter**

Prior to the execution of the search warrant at Morgan Management on May 14, 2018, SAs Hansen and Humphrey discussed the plan for executing that search warrant with AUSA Fabian and members of the law enforcement teams from the FBI and FHFA OIG tasked with executing the warrants. These planning discussions included SA Patel and the other FHFA OIG forensic examiner agents. (Aff. of Special Agent Erik Lars Hansen dated Jan. 3, 2022, at ¶ 5 ("Hansen Aff."); Aff. of Special Agent Umesh Patel dated Jan. 3, 2022, at ¶ 2 ("Patel Aff.").) During these discussions, the agents and AUSA Fabian made a determination to prioritize email data, because the investigation to date revealed that emails (and their

attachments) would likely yield the most amount of relevant evidence of knowledge and intent. (Hansen Aff. at ¶ 5; Aff. of AUSA John Fabian dated Jan. 3, 2022, at ¶ 3 ("Fabian Aff.").)

During the execution of the search warrant at Morgan Management on May 14, 2018, IT personnel from Morgan Management advised FHFA OIG forensic examiner agents on site that email data could be found on the Barracuda Archiver, which was a physical device at Morgan Management. (Dkt. 517-4 at ¶ 5.) Morgan Management IT personnel also advised that at some point prior to installation of the Barracuda Archiver, there was a physical Microsoft Exchange server located at Morgan Management that was no longer in use or available as of May 14, 2018. (Id. at ¶¶ 4, 9.) Further, with guidance from Morgan Management IT personnel, SA Patel identified a virtual backup of this Microsoft Exchange server within the PowerVault server, which was located at Frontier. (Id. at ¶ 9.) SA Patel initially attempted to copy data from the PowerVault server while on the premises at Frontier, beginning on May 14, 2018, but when this process took too long, he seized the entire PowerVault server on May 16, 2018, and transported it to the FHFA computer lab in Washington, D.C.[2] (Patel Aff. at ¶ 4.)

---

[2] The Court inquired about four hard drives; these consisted of data copied on-site at Morgan Management during the execution of the search warrant on May 14-15, 2018. FHFA OIG computer forensic agents, including SA Patel, copied data on-site from servers physically located at Morgan Management offices onto four government hard drives ("the four hard drives"). (Dkt. 517-4, at ¶ 7.) The data on "the four hard drives" constituted the full extent of the data copied on-site at Morgan Management and consisted of images of network shares or virtual machines "FTP," "CYBERVEEAM," "VGEEAMPVR," 1080 PVR-FILE IV," and "Archived Data." (Dkt. 157-1, at 93.) The data on the four hard drives was never processed or searched.

4

B. **Processing of the Evidence in Washington, D.C.**

In Washington, D.C., SA Patel copied the data from the Exchange server, as well as additional backup files from the PowerVault server, to a separate government hard drive.[3] (Dkt. 517-4, at ¶ 8.) The additional backup files were never processed or searched. By approximately June 5, 2018, SA Patel copied email data off of the Exchange server. The data copied from the Exchange server (along with the data that was extracted from the Barracuda Archiver, discussed below) was placed onto a separate hard drive (the "E/B Hard Drive") that was then provided to the USAO, which processed the data. (Patel. Aff. at ¶ 5; Dkt. 417 at 339:14-18.)

C. **Processing of the Evidence at the USAO**

The Magistrate Court ordered the government to provide voluntary discovery by July 27, 2018, which was later extended to October 12, 2018. (Dkt. 16; Minute Entry for Aug. 6, 2018 Status Conf.) No one from the investigative team had access to any of the ESI/data copied during execution of the Morgan Management and Frontier search warrants until: (1) the selected data had been processed; (2) potentially privileged material had been segregated through the application of search terms; and (3) potentially relevant data had been identified through the application of search terms. Following delays in processing the large amount of data, as well as delays in the privilege review process, AUSAs Penrose and Fabian determined that processing all of the data copied pursuant to the Morgan Management and Frontier search warrants would not be completed by the discovery deadlines set by the Magistrate Court. (Aff. of AUSA Douglas Penrose dated Jan. 3, 2022, at ¶ 5 ("Penrose Aff."); Fabian

---

[3] The backup files from the PowerVault server consisted of restored files from the following virtual machines: CYBERFP, CYBERFP2, MORGANSQL1, MORGANSQL2, MORGANACCT1. (Dkt. 517-4 at ¶ 8.)

Aff. at ¶ 6.) AUSAs Penrose and Fabian decided to proceed with the processing and production of the data from the Exchange server, the Barracuda Archiver, and four of the eight seized computers, and decided not to process any additional data from the Morgan Management and Frontier search warrants at that time. (Penrose Aff. at ¶ 5.)[4] No other data was processed, *i.e.*, the four hard drives, *see* fn. 2; the backup files from the PowerVault server, *see* fn. 3; or the three devices identified in the government's November 22, 2019 Response in Opposition (Dkt. 143, § E). At the time, AUSAs Penrose and Fabian did not appreciate the full details or scope of all of the materials copied during the execution of the Morgan Management and Frontier search warrants, and merely understood that some amount of additional data had been copied. (Penrose Aff. at ¶ 5; Fabian Aff. at ¶ 6.)

## II.   THE BARRACUDA ARCHIVER

SA Hansen, working with a team of FHFA OIG forensic agents, decided on May 14, 2018, to copy only .pst files from the Barracuda Archiver for the seven individuals named in Attachment B of the Morgan Management warrant. SA Hansen was presented with this option by one of the Forensic Agents assisting him that day and SA Hansen confirmed and agreed with this approach because he believed it was consistent with the scope of the warrant and a reasonable way to focus on what was most likely to be evidence relevant to the investigation. (Hansen Aff. at ¶ 7.)

As discussed above, SA Patel copied these seven .psts, along with the data from the Exchange server, onto the E/B Hard Drive.[5] On or about May 31, 2018, the Barracuda

---

[4] These computers were associated with Robert Morgan, Kevin Morgan, and Todd Morgan. Data from a fifth computer, associated with Scott Cresswell, was processed and produced subsequently, in connection with the May 2019 Superseding Indictment. (Penrose Aff. at ¶ 5.)

[5] SA Patel copied these seven .psts off-site, after the Forensic Agents were unable to copy the data on-site and the entire Barracuda Archiver was removed to the FHFA facility in Washington, D.C. (Dkt. 517-4, at ¶ 6.)

6

Archiver device was returned to a custodian for Morgan Management. (Dkt. 517-4, at ¶ 6.) A copy of the E/B Hard Drive was sent to the FBI Buffalo office to be stored with the other case evidence, and a copy was also provided to the USAO for processing. (Patel Aff. at ¶ 5; Dkt. 417 at 339:14-18.)

AUSA Fabian does not recall ever being informed that only seven .pst files from the Barracuda Archiver had been copied before the device was returned to Morgan Management. (Fabian Aff. at ¶¶ 4, 8.)

### III.  THE BESANT PHONE

AUSA Fabian decided that the material identified on the Besant phone did not constitute Rule 16 material, in consultation with AUSA Penrose and SA Humphrey. The material the government identified as relevant within the Besant phone consisted of text conversations discussing Witness A's cooperation with the government in the investigation into a fake apartment staging scheme at Rochester Village, a Morgan Management property. (Dkt. 517-1 at ¶¶ 7, 9; Dkt. 517-2.) After review, and discussion with SA Humphrey, the government flagged these conversations as potential *Jencks* material for Witness A. (Fabian Aff. at ¶ 11.)  No agent or prosecutor reviewed the materials in the "Audio" file, and no member of the investigative team was aware of the recording identified by Robert Morgan in his reply brief.

In preparing discovery for the May 2018 Indictment, SA Humphrey alerted AUSA Penrose to the existence of the Besant phone and explained the information that he had previously identified through his review. (Penrose Aff. at ¶ 9.) AUSA Penrose did not review a copy of the Cellebrite report for the phone at this time. (Id.) Rather, AUSA Penrose spoke with AUSA Fabian regarding the information from the phone that SA Humphrey had

7

identified and whether it needed to be produced. (Id.) Around the time of the execution of the Besant search warrant in February 2018, SA Humphrey had discussed his findings with AUSA Fabian, who also reviewed portions of the Cellebrite report. (Fabian Aff. at ¶ 10.) Based on his prior review and discussions, AUSA Fabian ultimately determined that the information identified by SA Humphrey did not need to be disclosed as part of the government's initial discovery disclosures in connection with the May 2018 Indictment. (Id. at ¶ 11.) In making this determination, AUSA Fabian understood that the identified relevant information from within the Besant phone could possibly constitute *Jencks* material to be turned over before trial. (Id.)

With respect to discovery provided with the return of the May 2019 Superseding Indictment, neither AUSA Penrose nor AUSA Fabian recall re-evaluating the decision whether to produce the information that SA Humphrey identified from his review of the phone. (Id. at ¶ 12; Penrose Aff. at ¶ 10.) The AUSAs' focus at that time was on ensuring that all the discovery that had been provided to defendants in connection with the May 2018 Indictment would be immediately available to the new defendants charged in the 2019 Superseding Indictment. The AUSAs also focused on what portion of the evidence obtained *after* the return of the 2018 Indictment should be turned over as Rule16 discovery. (Fabian Aff. at ¶ 7; Penrose Aff. at ¶ 10.)

When responding to the Court's inquiries regarding the government's compliance with Rule 16 at the status conferences in December 2018 and early 2019, neither AUSA Penrose nor AUSA Fabian thought of or remembered the information identified from the Besant phone. (Fabian Aff. at ¶ 13; Penrose Aff. at ¶ 12.) AUSA Fabian did not again review the Cellebrite report for the phone after his review in February 2018, and AUSA Penrose did not

8

review the report at all until after the Superseding Indictment was dismissed. (Fabian Aff. at ¶¶ 10, 13; Penrose Aff. at ¶ 11.)

## IV.     THE DECEMBER 2018 T-12s

The government received Kevin Morgan's T-12s[6] on December 7, 2018, as part of the process of calculating the loss amount to be included in his plea agreement. AUSA Fabian, along with SA Hansen, used these T-12s to attempt to approximate a potential loss amount for application to the sentencing guidelines. Neither AUSA Fabian nor AUSA Penrose ever reviewed the T-12s within the context of Rule 16 and never contemplated producing them in discovery in docket 18-CR-108.

On December 7, 2018, counsel for Kevin Morgan sent the government T-12s relating to certain commercial real estate properties. (Fabian Aff. at ¶ 14.) These were provided as part of plea negotiations for Kevin Morgan, who was charged in the 2018 Indictment, and who pleaded guilty on December 21, 2018. (Id.; Dkt. 31) Specifically, counsel for Kevin Morgan provided the T-12s to support counsel's view of the attributable loss, which required determination of the *present* value of the specific commercial properties as to which Kevin Morgan would admit committing fraud with respect to their financing.[7] (Fabian Aff. at ¶¶ 14, 15.)

At the time the T-12s were received, neither AUSA Fabian nor AUSA Penrose evaluated them to determine whether they fell within the government's Rule 16 discovery

---

[6] A "T-12" or "trailing twelve statement" sets forth the income for a property for each of the preceding twelve months.

[7] In a mortgage fraud case, the attributable loss is determined by the difference between the value of a property and the outstanding loan balance. *See* Application Note 3.E(iii) to USSG §2B1.1. Where a property has not been sold, the fair market value is determined at the time of the plea. *See id.*

9

obligations. (Fabian Aff. at ¶ 16; Penrose Aff. at ¶ 13.) This was because they had been provided in the context of plea negotiations during the process of approximating a loss calculation for sentencing purposes.[8] Because of the context in which the T-12s were provided, they were not included by the government in any lists of potential evidence or proffer materials that would have led to their consideration as Rule 16 material. (Hansen Aff. at ¶ 9.) As a result, when AUSAs Penrose and Fabian were preparing discovery in connection with the 2019 Superseding Indictment, they did not evaluate these T-12s. (Penrose Aff. at ¶ 13.)

## CONCLUSION

For the reasons set forth above and in the attached affidavits, and for the reasons set forth in the government's pleadings on these motions, this Court should deny Defendants' motions to reconsider the Court's order to dismiss the Superseding Indictment without prejudice.

DATED:      Buffalo, New York, January 3, 2022

                                        TRINI E. ROSS
                                        United States Attorney

BY:   s/ DOUGLAS A. C. PENROSE      BY:   s/ EVAN K. GLABERSON
      Assistant United States Attorney       Assistant United States Attorney
      United States Attorney's Office        United States Attorney's Office
      Western District of New York           Western District of New York
      138 Delaware Avenue                    138 Delaware Avenue
      Buffalo, New York  14202               Buffalo, New York  14202
      (716) 843-5868                         (716) 843-5871
      Douglas.Penorse@usdoj.gov              Evan.Glaberson@usdoj.gov

---

[8] The T-12s were produced as discovery in connection with case number 21-CR-32. (Penrose Aff. at ¶ 14.) This is because the government took an expansive view of discovery and erred heavily on the side of early disclosure, absent an affirmative reason not to disclose them, and not because the government believed that the T-12s were in fact subject to Rule 16. (Id.)

10